UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**KIMBERLEY LINDSEY,**

   Plaintiff,

v.                                                  No. 4:22-cv-00502-P

**AMERICAN AIRLINES, INC.,**

   Defendant.

## OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 20. Having considered the briefing and evidence of record, the Court concludes the Motion should be and hereby is **GRANTED**.

## BACKGROUND

Kimberley Lindsey wanted a better job. In particular, Lindsey applied for a coveted spot with the "Onboard Service" team at American Airlines. American chose other candidates for the gig; Lindsey says American did so for discriminatory reasons. To understand how the parties got here, it helps to examine Lindsey's work chronology. With American's multi-tiered "Department–Sub-Department–Team" organization,[1] Lindsey's intradepartmental history gets confusing. Relevant highlights are below.

---

[1] Be warned: the corporate nomenclature in this case is abstruse. To prime the reader, this case concerns subdepartments under American's Customer Experience/Flight Service Department ("Flight Service"). Employees in Flight Service fall into two groups: Flight Attendants and Corporate. On the corporate side, Flight Service has multiple subdepartments, including Customer Delivery, Food & Beverage, and Safety. These subdepartments are organized into Teams. Relevant here is the Policies & Procedures Team (which falls under Customer Delivery, which falls under Flight Service). The parties also discuss various "levels" assigned to corporate employees which correspond to the employees' responsibilities and pay scales. The Court signposts wherever these taxonomies are salient.

American hired Lindsey in 2013 as a flight attendant in Flight Service. In 2018, Lindsey switched positions within Flight Service, taking a new role as an analyst with the Policies & Procedures Team.[2] That's where turbulence hit. During her time with Policies & Procedures, Lindsey joined other American employees in filing a complaint against her supervisor, Jeffrey Painter. As part of the grievance against Painter, Lindsey suggested her coworker, Robert Aderman, added "fuel to the fire" of Painter's workplace hostilities. American fired Painter but took no formal action against Aderman. Complaints regarding Aderman continued for the duration of Lindsey's time with Policies & Procedures, culminating in internal disciplinary action against Aderman in 2020.

In early 2020, COVID-19 hit, prompting reorganization at American. As part of that reorganization, American reduced its Flight Service workforce by 37% and reassigned the OSM to a new two-person Onboard Service team under the umbrella of Food & Beverage, rather than Customer Delivery. Neither Lindsey nor Aderman were selected for one of the new Onboard Service positions. Lindsey says this was age-discriminatory, as both candidates selected for Onboard Service—Kati Conti and Carolina Londono—were younger women. With the OSM reassigned, American nixed Lindsey's position with Policies & Procedures on June 30, 2020. The next week, Lindsey filed a complaint alleging her position was eliminated in retaliation for her 2019 grievance against Painter. American investigated Lindsey's complaint but found no evidence to substantiate her allegations. Rather, American insisted Lindsey's position was eliminated as part of American's department-wide belt-tightening in response to the COVID-induced glut in air travel.

With their roles eliminated, the next destination for Aderman was the Safety subdepartment, while Lindsey landed back where she began, resuming work as a flight attendant. After flight-attendant furloughs

---

[2]At Policies & Procedures, Lindsey primarily worked on the Onboard Service Manual ("OSM") used by flight attendants and cabin crews in American's worldwide fleet.

2

for the remainder of 2020, Lindsey returned to work in early 2021. She has continued in that position to date.

Around the time she returned to work, Lindsey filed a discrimination charge with the EEOC. After exhausting her administrative remedies, Lindsey sued American on June 8, 2022. She filed an Amended Complaint on February 21, 2023, alleging counts of retaliation and sex- and age-based discrimination in violation of Title VII of the Civil Rights Act. Consistent with the approach adopted in American's summary judgment briefing, the Court assumes Lindsey intended to bring her age discrimination claim under the Age Discrimination in Employment Act ("ADEA").

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect a case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* In assessing whether summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023). The Court may rely on any evidence of record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (noting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). But the Court need not mine the record for evidence supporting the nonmovant; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

American seeks summary judgment on each of Lindsey's claims: sex- and age- based discrimination and retaliation. The Court addresses the discrimination claims first and then proceeds to the retaliation claim.

### A.    Title VII Sex Discrimination.

Title VII prohibits workplace discrimination based on sex. *See* 42 U.S.C. § 2000e–2(a). This can manifest in different ways, including direct discrimination (where an employee suffers adverse employment actions because of their sex) or discrimination-by-sexual-harassment (where pervasive workplace harassment constitutes sex-based discrimination). *See Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 220–21 (5th Cir. 2023). The Court analyzes Lindsey's claim through both lenses.

#### 1.    Direct Sex Discrimination.

To establish a prima facie discrimination claim under Title VII, Lindsey must show "(1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007), *abrogated on other grounds by Hamilton v. Dall. Cnty.*, ___ F.4th ___, 2023 WL 5316716 (5th Cir. 2023). "Adverse employment action" doesn't always mean the plaintiff was fired; Title VII prohibits employers from taking any unfavorable action based on an employee's membership in a protected class. *Hishon v. King & Spalding*, 467 U.S. 69, 77 (1984); *see also Hamilton*, 2023 WL 5316716, at *8 (noting any hypothetical adverse action may support a Title VII discrimination claim if it represents a "tangible, objective, and material instance of sex discrimination in the terms, conditions, or privileges of employment"). In such "disparate treatment" cases, the plaintiff must also show their employer "had a discriminatory intent or motive for taking a job-related action." *Saketkoo v. Admins. of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022) (citing *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)).

4

Plaintiffs can demonstrate discriminatory intent circumstantially by showing a colleague outside their protected class (in this case, Aderman) was treated more favorably. *Id.* At that point, the burden shifts to the employer to provide a non-discriminatory counter-explanation as outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). While the *McDonnell Douglas* analysis comes into play for Lindsey's ADEA claim, the Court need not progress that far for the instant claim because Lindsey fails to establish a prima facie claim of sex discrimination.

Lindsey is a member of a protected class (a female) and suffered an adverse employment action (she wasn't selected for Onboard Service). *See* ECF No. 16 at 2–5. The parties extensively brief the second element—whether Lindsey was qualified for the position sought—but succeed only in proving a genuine dispute exists over that material fact. *See Anderson*, 477 U.S. at 242–43. Lindsey thus survives summary judgment for the first, second, and third elements under *Alvarado*. *See* 492 F.3d at 611. But her claim unravels at the fourth element, as Lindsey fails to show Aderman was treated more favorably because of his sex.

The crux of Lindsey's direct-discrimination claim is that, after Aderman's and Lindsey's positions were eliminated, Aderman landed in favorable position with Safety while Lindsey "was presented with two options: (1) leave AA; or (2) accept a demotion to Flight Attendant and an approximately 49% reduction in pay." ECF No. 16 at 4. In moving to Safety, Aderman was bumped from a Level 3 analyst to a Level 4 senior analyst, which pays better. ECF No. 21 at 15. But Lindsey admits having no personal knowledge of who placed Aderman in Safety or why, and she furnishes no evidence suggesting sex was a factor. ECF No. 22 at 109. Moreover, Aderman affirmatively sought his role with Safety by contacting a former supervisor to discuss the opening. ECF No. 21 at 22. Aderman's qualifications aside, it is not discriminatory for Aderman to capitalize upon professional connections to land in a position superior to Lindsey's.

The record reflects no work history that would uniquely qualify Lindsey for a position in Safety. Aderman, on the other hand, "was a

5

lower-level analyst and received a higher performance rating." *Id*. It also didn't hurt that Aderman had an established relationship with Safety leadership. Even if Lindsey was qualified for a Safety position, Aderman and Lindsey experienced the *same* adverse employment action when their positions with Policies & Procedures were eliminated—and there is no evidence Lindsey inquired about the Safety position. Aderman wasn't automatically chosen for Safety; he sought the position on his own initiative. ECF No. 21 at 22. Thus, Aderman's hiring by Safety cannot serve as the adverse employment action for Lindsey's claim unless Lindsey shows that she did not apply for Safety because she believed doing so would be a "futile gesture" considering American's systemic discrimination. *Shackleford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999). Because Lindsey furnishes no such evidence, the only relevant adverse action was the elimination of her job with Policies & Procedures (which affected Aderman equally). In this sense, Aderman was not "retained" so much as he *pivoted*, though Safety falls under Flight Service. That someone outside of Lindsey's protected class leaned on his professional network to find a better job does not give rise to Title VII liability for American. *Id*. Lindsey thus fails to establish a prima facie case of direct discrimination.

### 2. Discriminatory Sexual Harassment.

As mentioned above, "Title VII also prohibits sexual harassment as a form of employment discrimination." *Wallace*, 57 F.4th at 220. "There are two types of sexual harassment under Title VII: *quid-pro-quo* and hostile-environment harassment." *EEOC v. Boh Bros. Const. Co., LLC*, 731 F.3d 444, 453 (5th Cir. 2013). For the latter, relevant here, the plaintiff must show: "(1) she belongs to a protected class; (2) she was subjected to harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action." *Saketkoo*, 31 F.4th at 1003.

Lindsey satisfies the first element and the record suggests Lindsey was subjected to harassment from Aderman, satisfying the second.[3] The parties go back and forth on the fourth and fifth elements, disputing the degree to which Aderman created a "hostile work environment" and the propriety of American's response to Lindsey's complaints. This genuine dispute of material fact precludes summary judgment on either of those elements. Summary judgment is nonetheless warranted because there is no evidence Aderman's harassment was sex-based.

Unfortunately for workers in Lindsey's position, being a jerk isn't illegal. True, "Title VII [ ] makes it unlawful for employers to require 'people to work in a discriminatorily hostile or abuse environment.'" *West v. City of Houston, Tex.*, 960 F.3d 736, 740 (5th Cir. 2020) (quoting *Gardner v. CLC of Pascagoula, LLC*, 915 F.3d 320, 325 (5th Cir. 2019)). But courts have consistently held that Title VII requires some objective indicia that a coworker's animus was based on an employee's membership in a protected class. *See, e.g., Saketkoo*, 31 F.4th at 1004 (affirming district court's grant of summary judgment, reasoning that "even if we assume Dr. Lasky's treatment of [Plaintiff] was severe enough to constitute harassment, her claim still fails. Although she presented evidence of his tendency to degrade her, [Plaintiff] did not demonstrate that his actions were based on her gender"); *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir. 2002) ("[H]arassment that is severe or pervasive enough to create a hostile work environment might be excluded from the coverage of Title VII because it was not discriminatory on the basis of sex.") (cleaned up); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 763 (5th Cir. 2006) (finding no Title VII liability where plaintiff "made no argument that his [gender non-conformity] provided the basis for the harassment he experienced") (cleaned up).

---

[3] *See, e.g.*, ECF Nos. 16 at 3 (recounting Aderman's history of hostilities, including instances where he "yelled and became highly aggressive and verbally abusive with his attacks over a period of 45 minutes"); 24 at 5 (again recounting Aderman becoming "highly aggressive and verbally abusive" and noting that "[d]espite Plaintiff's reports, Aderman, who had only been employed by Defendant for four years, was promoted to a level 4 Senior Analyst"); *see also* ECF No. 22 at 35–52 (the human resources complaint detailing Aderman's misconduct).

Thus, without any evidence that Aderman's workplace hostilities were sexually motivated, Lindsey cannot maintain a discrimination-by-sexual-harassment claim.

\* \* \*

For the above reasons, summary judgment is warranted for Lindsey's sex-discrimination claim. The fatal flaw for her direct-discrimination theory is that she suffered the same adverse employment action as her male counterpart (though he landed in a favorable position afterward). The flaw for her discrimination-by-harassment theory is that no evidence shows the harassment she experienced was sex-based. To reiterate, the Court sympathizes with Lindsey's position, as her time with Policies & Procedures was marred by a nasty coworker. But what was true in *Saketkoo* is true here: "The consistency of [Aderman's] workplace demeanor is lamentable, but that circumstance does not supplant [Lindsey's] burden to satisfy each element of a Title VII cause of action." 31 F.4th at 1004. Accordingly, the Court **GRANTS** American's motion vis-à-vis Lindsey's sex-discrimination claim.

### B. ADEA Age Discrimination.

As noted above, the Court shares American's intuition that Lindsey meant to bring her age-discrimination claim under the ADEA (which prohibits age discrimination), rather than Title VII (which doesn't). *See generally* ECF No. 21 at 19; *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (noting "Title VII does not protect against age . . . discrimination"). The analysis is three-part. *First*, Lindsey must establish a prima facie claim by showing:"(1) [s]he was discharged; (2) [s]he was qualified for the position; (3) [s]he was within the protected class at the time of discharge; and (4) [s]he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of [her] age." *Rachid v. Jack in the Box*, 376 F.3d 305, 309 (5th Cir. 2004) (cleaned up). *Second*, if Lindsey does so, the *McDonnell Douglas* rubric kicks in, meaning American has the burden to provide a nondiscriminatory explanation for its employment decision. *Harris v. City of Schertz*, 27 F.4th 1120, 1123 (5th Cir. 2022). *Third*, if American does so, the ball is back in Lindsey's court

8

to show American's explanation is pretextual. As explained below, Lindsey establishes a prima facie claim, but American carries its burden in showing nondiscriminatory reasons for the relevant employment decision. As Lindsey provides no evidence that American's explanation is pretextual, summary judgment is warranted.

### 1. Lindsey establishes a prima facie claim.

Lindsey establishes a prima facie age-discrimination claim. Summary judgment evidence shows American passed up Lindsey (who was approaching sixty at the time) for two younger females: Mses. Conti and Londono. *See* ECF No. 22 at 60. This satisfies the first, third, and fourth elements under *Rachid*. 376 F.3d at 309. A genuine dispute exists for the second element, as the parties brief diverging evidence of Lindsey's qualifications for Onboard Service.[4] For present purposes, Lindsey has established at least sufficient qualifications to support a prima facie claim. This triggers the *McDonnell Douglas* shift, meaning the burden falls on American to provide a legitimate, nondiscriminatory reason for its employment decision. *See McDonnell Douglas*, 411 U.S. at 802; *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (applying *McDonnell Douglas* burden-shifting to ADEA claim). As explained below, American carries its burden.

### 2. American provides a legitimate, non-discriminatory reason for the employment decision.

American says it hired Ms. Conti for the first Onboard Service position for her relevant work experience and soft skills. Like Lindsey, Conti worked her way up through the corporate side of Flight Service from her initial role as a flight attendant. ECF No. 22 at 60. Although

---

[4]*Compare* ECF No. 21 at 11 ("Ms. Proctor found Plaintiff to be an average-to-good performer, and she noted some concerns about her 'soft skills.' For example, at Plaintiff's annual performance review in February 2020, Ms. Proctor encouraged her to continue working on her team-building skills and to collaborate effectively with others. Ms. Proctor shared the importance of being a team player and communicating as 'one voice' for the Policies and Procedures team.") (record citations omitted) *with* ECF No. 24 at 9 ("While occupying the [Senior Analyst] position, Plaintiff obtained positive performance reviews all along the way. Plaintiff's own direct supervisor at the time, Kirstin Perkins, testified that Plaintiff was 'highly qualified.'").

younger than Lindsey, Conti had worked for American longer. *Id.* Conti also had extensive experience in food service, making her an ideal candidate for the new Onboard Service team, which was organized under the Food & Beverage subdepartment. *Id.* Finally, Conti was known to have great "soft skills" and was particularly adept at "soliciting feedback from flight attendants in a nonconfrontational way and explaining to flight attendants why the galley was packed the way it is." ECF No. 21 at 14. As this would be a big part of the job with Onboard Service, American chose Conti for the first position. American chose Ms. Londono for the second position because she came "strongly recommended" from other leaders within Flight Service, while Lindsey was not recommended for the position at all. ECF No. 22 at 60.

American's explanation is legitimate on its face and should not be judicially second-guessed absent a showing of pretext. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000) (citation omitted) ("[The employer's] burden is one of production, not persuasion; it can involve no credibility assessment."). Numerous considerations go into any employment decision, especially in cases like this where the team was new and only two spots were available. *See* ECF No. 21 at 12. As a matter of simple math, there are typically more applicants than positions for any job. In the case of Onboard Service, there were significantly fewer positions (two) than interested candidates. American has provided legitimate, non-discriminatory reasons for hiring Conti and Londono; namely, their work experience, high performance reviews, and stellar recommendations. ECF Nos. 21 at 14; 22 at 60. Discrimination laws are not "vehicles for judicial second-guessing of business decisions," *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997), so the Court will not probe American's reasons further absent a showing of pretext.

### 3. Lindsey presents no evidence of pretext.

While courts are loath to second-guess a company's hiring decisions, employers cannot escape ADEA liability by furnishing post hoc rationalizations for discriminatory employment practices. Thus, "[i]f the employer articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity

10

to rebut the employer's purported explanation to show that the reason given is merely pretextual." *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citing *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010)). In this context, "merely pretextual" is legal-speak for hogwash, baloney, balderdash, or just plain untrue. To show American's explanation is "merely pretextual" is no easy feat; Lindsey must do more than nit-pick the resumes of Conti and Londono. Rather, she must furnish evidence that reasonably indicates Conti's and Londono's relative youth played a bigger role in the decision than did their qualifications. As discussed below, Lindsey points the Court to no such evidence, warranting summary judgment on her ADEA claim.

With no evidence indicating Lindsey was discouraged from applying or disparaged for her age, Lindsey's best bet to show pretext is the "clearly more qualified" test. This is essentially a rule of thumb that says if an employer passes up on an older employee that is "clearly more qualified" for a position, it's a safe bet age was a factor. *See Moss*, 610 F.3d at 927. Like all rules of thumb, the "clearly more qualified" test has its limitations and can lead to a morass of subjective considerations the judiciary is ill-equipped to traverse. *See EEOC v. La. Off. of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995) (noting pretext can be inferred where "the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employee[ ] who [was] selected"). There is no bright line between "as qualified" and "merely better" or between "merely better" and "much better." As evidenced by the dizzying array of considerations found probative in similar cases, courts effectively define "clearly more qualified" as "you know it when you see it." *See, e.g.*, *id.* at 1446 (collecting cases).

Pointing to no evidence of age-related animus, Lindsey instead stacks her credentials against Conti's and Londono's. *See* ECF No. 16 at 4 (noting neither Conti nor Londono "had experience with the job functions for which Plaintiff had been responsible, which included onboard service procedures, policies, technical writing, manual editing, and working with Adobe Framemaker software"). Though Lindsey's skillset seems transferable, it is not obvious a priori that such

11

experience made her a better candidate for Onboard Service than Conti or Londono (with their own unique skillsets). *Cf.* ECF No. 22 at 60. Regardless, the question is not whether American's "decision was the correct one, or the fair one, or the best one." *Deines v. Tex. Dep't of Prot. & Reg. Servs.*, 164 F.3d 277, 281 (5th Cir. 1999). Rather, the question is whether Lindsey was passed up for Onboard Service "because of [her] age." 29 U.S.C. § 623(a)(1). And Lindsey identifies no evidence suggesting American's explanation is pretextual.

Lindsey's case seems stronger vis-à-vis Londono than Conti, as American references Conti's skillset and experience but only references Londono's stellar recommendation from departmental leadership. ECF No. 22 at 60. Further, Lindsey notes that "Londono's prior position was working on the uniform in Flight Service," which does not seem immediately relevant to her new position with Onboard Service. ECF No. 16 at 4. But that's a call for American to make, not the Court. "To establish a fact question as to relative qualifications, a plaintiff must provide sufficiently specific reasons for h[er] opinion; mere subjective speculation will not suffice." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996). The evidence does not reflect (and Lindsey does not explain) why Londono's prior position made her less qualified for Onboard Service, much less why Lindsey was "clearly more qualified" for the position. This proves fatal for Lindsey's claim.

*   *   *

While Lindsey established a prima facie discrimination claim under the ADEA, American provided non-discriminatory reasons for the relevant employment decision. The record contains no evidence that American's decision was based upon age-related animus and Lindsey identified no evidence that she was "clearly more qualified" for an Onboard Service position. The Court **GRANTS** summary judgment on Lindsey's ADEA claim accordingly.

### C.   Title VII Retaliation.

Having addressed Lindsey's discrimination claims, the Court now turns to her retaliation claim. The dearth of supporting evidence for this claim is conspicuous. "To establish a *prima facie* case of retaliation, a

plaintiff must show that '(1) [s]he participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action.'" *Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 678 (5th Cir. 2021) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007)). Lindsey satisfies the first element because filing grievances with human resources is protected activity under Title VII. *Id.*; *see* 42 U.S.C. § 2000e–3(a). Lindsey satisfies the second element because she suffered an adverse employment action, as previously established. But Lindsey fails to establish the third element—that the elimination of her role with Policies & Procedures was related to her complaints against Painter and Aderman. *See Brown v. Wal-Mart Stores East, LP*, 969 F.3d 571, 577 (5th Cir. 2020) ("Ultimately, in order to survive a motion for summary judgment, a plaintiff must show a conflict in substantial evidence on the question of whether the employer would not have taken the adverse employment action but for the protected activity.") (internal quotation marks and citation omitted).

Lindsey alleges that "she was demoted because of her prior hostile work environment reports." ECF No. 16 at 4. As an act of double-retaliation, she further suggests her 2020 furlough was brought about because she took her retaliation concerns to American's HR department. *Id.* But without any evidence—even circumstantial or inferential evidence—Lindsey appears to conflate correlation with its more relevant sibling, causation. Lindsey's job was eliminated seven months after she took her concerns regarding Painter and Aderman to human resources. *Cf. Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir. 2002) (holding a five-month period did not support a causality inference). But two things happened in the interim. *First*, American fired Painter and hired Ms. Proctor as Lindsey's new manager, meaning Lindsey was under entirely new leadership when she was eliminated as compared to when she filed her initial grievance. *See* ECF Nos. 21 at 28; 22 at 55. *Second*, and more relevant, a global pandemic hit that caused massive layoffs and reorganizations in the airline industry. *See* ECF No. 22 at 56. Lindsey and Aderman were not alone when they lost their jobs

13

with Policies & Procedures. Rather, more than a third of the Flight Service workforce faced the same unfortunate circumstance. ECF Nos. 21 at 12; 22 at 55–57. Lindsey's most recent manager gave her a low rating for upper management potential and questioned her ability to work as a team player, increasing the odds that Lindsey's job would be nixed when American had to cut costs. ECF No. 22 at 56. That Lindsey filed a grievance more than half a year earlier does not, without a scintilla of evidence showing causality, support a Title VII retaliation claim. *Brown*, 969 F.3d at 577. The Court **GRANTS** summary judgment on Lindsey's retaliation claim accordingly.

## CONCLUSION

For the above reasons, the Court **GRANTS** the Motion for Summary Judgment (ECF No. 20) and **ENTERS** summary judgment in favor of Defendant American Airlines, Inc. Accordingly, Plaintiff Kimberley Lindsey's claims in this action are **DISMISSED with prejudice**.

**SO ORDERED** on this **7th day** of **September 2023.**

_Mark T. Pittman_
Mark T. Pittman
UNITED STATES DISTRICT JUDGE